**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE**, <br><br> Plaintiff, <br><br> v. <br><br> **JOAN M. GILMER**, in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri; and **KATHY S. LLOYD**, in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator, <br><br> Defendants. | Case No: 21-cv-_____ |

**COMPLAINT
ALLEGING VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983
AND THE FIRST AMENDMENT AND SEEKING PRELIMINARY
AND PERMANENT INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges the following in support of its Complaint against Defendant Joan M. Gilmer, in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri ("Gilmer" or "Clerk"), and Defendant Kathy S. Lloyd, in her official capacity as Administrative Director of the Missouri Office of State Courts Administrator ("Lloyd" or "Administrator") (collectively referred to herein as the "Defendants").

## INTRODUCTION

1.     The First Amendment provides the press and public with a presumptive right of timely access to civil petitions filed with the court.  This right of access attaches to new petitions upon their receipt by the court.  Grounded in the right of free expression, where the right of access applies such access must also be contemporaneous.  Contemporaneous access to new civil petitions is fundamental to the press and the public; it is essential to accurate and fair news reporting of civil court actions and thus vital to the public's ability to be aware of and discuss what is occurring in the judiciary, an important branch of government.  Delayed access inhibits that discussion.

2.     Courts across the country have recognized that the presumptive right of access attaches to judicial documents, including civil petitions, upon receipt of those documents by a court.  When a petition is withheld through delay, the public is left immediately unaware that a case has been filed, that the powers of the judicial branch of government have been invoked, and that public resources have been spent to resolve a dispute.

3.     Though providing contemporaneous access to e-filed petitions is a simple matter, access to new e-filed civil petitions in the Circuit Court for St. Louis County, Missouri ("St. Louis County Court") is delayed for days and often weeks.

4.     The delays in access experienced by Courthouse News at the St. Louis County Court (and at other circuit courts throughout Missouri) are the result of Defendants' policies and practices of withholding access to new e-filed petitions until after they have been administratively processed by court staff.  New petitions that are filed into the Missouri eFiling System sit, sometimes for days and often weeks on end in an electronic queue where they are withheld from public view while awaiting processing by court staff.

5.     The Administrator's office developed and maintains the Missouri eFiling System,

2

which facilitates statewide e-filing across all Missouri circuit courts.  Courthouse News is informed and believes that the Missouri eFiling System functions essentially the same as other e-filing systems used by courts across the nation to provide Courthouse News and others with access, on a pre-processing basis, to new civil petitions or complaints: (i) the filer submits electronic documents into the electronic case file system and supplies all required information (circuit court, document type, etc.); (ii) the e-file manager ("EFM") receives the documents and the information supplied by the filer; (iii) the EFM sorts the documents by circuit court, document type, etc.; (iv) the EFM delivers the documents to electronic queues assigned to the circuit courts to which the filings are submitted; (v) the documents sit in the electronic queues while they wait for court staff to process or docket them; and (vi) once processed, the documents migrate from the work queues into the courts' case management system (*i.e.*, Missouri Case.net).  However, unlike other courts that provide access to new e-filed petitions or complaints upon receipt, the Missouri circuit courts withhold access to new petitions until after they are processed.

6.     The delays experienced by Courthouse News at the St. Louis County Court result from Defendants' policies and practices of withholding access to non-confidential civil petitions after the Court receives them, and while they sit in electronic queues waiting to be processed.

7.     For the period of January 1, 2020, to December 31, 2020, Courthouse News' tracking shows that the St. Louis County Court made less than **5%** of new non-confidential civil petitions available the day of filing, withholding roughly **40%** of them one to four court days, and withholding roughly **55%** of them for ***one week***, and sometimes longer.  These delays are the functional equivalent of access denials and violate the First Amendment.  And, as explained below, these numbers do not reflect additional impairment of the press's ability to see new petitions that results from being denied remote access.

8.     The delays resulting from Defendants' policies and practices of withholding access until after processing a petition are compounded by the unequal manner in which the Missouri courts provide different levels of access to attorneys, on the one hand, and the press and general public, on the other hand.  Missouri courts provide attorneys with remote, online access to new civil petitions (and other case documents) through Missouri Case.net.  They can view and download any new civil petition filed in a Missouri circuit court, once processed and available on Missouri Case.net.  In contrast, members of the press and general public cannot see petitions on Missouri Case.net.  They can only view docket information (*i.e.*, filing date, parties, and a one or two word case description) remotely online, and must go to the courthouse and use public access terminals to see the petitions themselves.  Even then, members of the press and general public can only get copies of petitions filed at the particular courthouse in which the public access terminal is located.  Thus, unlike attorneys, members of the press and general public must settle for docket-only information on Missouri Case.net unless they are able to travel to a courthouse to view a petition and, if they happen to be in the right courthouse, get a copy.

9.     The impact of being denied remote access has been heightened by the COVID-19 pandemic.  Some courthouses have removed public access terminals altogether.  Where public terminals remain available, they are typically located in small spaces with substantial public traffic, requiring contact with other members of the public.  Moreover, under current restrictions, access is typically limited to a single terminal shared by all members of the press and public, effectively preventing Courthouse News' reporters from doing their jobs.

10.    Courthouse News and other members of the press thus face two separate issues:  (1) access for everyone—including lawyers—is delayed because petitions are not available for viewing until after court staff has completed administrative processing; and (2) though the Courts

4

make petitions available for remote, online viewing and download by members of the Missouri Bar, the press and general public can view petitions only through public access terminals at courthouses and can obtain copies of petitions only from the courthouse in which the petition was filed. These restrictions are unnecessary and the resulting problems can easily be avoided, as evidenced by the many courts across the nation that provide the press and public timely access to new e-filed petitions through means readily available to the Missouri Courts.

11.     Defendants' policies and practices of withholding access to new petitions until after processing, as well as Defendants' unequal access policies, violate Courthouse News' First Amendment right of timely access to new civil petitions.

12.     Courthouse News has made numerous efforts to raise and address the issues giving rise to this Complaint with the St. Louis County Court and the Administrator's office in an attempt to resolve this matter without resorting to litigation. On January 8, 2021, Courthouse News sent a letter to Defendants proposing a solution which, had it been adopted by Defendants, could have avoided the need for this action by resolving the delays caused by Defendants' process-first policies, as well as the additional issues caused by Defendants' unequal access policies. A copy of this letter is attached as Exhibit 1.

13.     Defendant Gilmer did not respond to the letter. The Administrator's office responded to the letter on March 3, 2021, but did not accept Courthouse News' proposal. While the letter referenced a recent modification to a Supreme Court rule that will result in remote public access to documents at some future point in time, it does not present a solution for addressing or resolving the delays resulting from Defendants' policies and practices of withholding access to new petitions until after they are processed. A copy of this letter is attached as Exhibit 2.

14.     On March 4, 2021, counsel for Courthouse News spoke with counsel for the

Administrator to advise her of this action.  On March 5, 2021, counsel for Courthouse News called Defendant Gilmer's office at a previously-scheduled time to do the same, but Defendant Gilmer could not be reached during several attempts.

15.     Courthouse News brings this action to address constitutional wrongs, to challenge the legality of Defendants' policies and practices, and to seek declaratory and injunctive relief.

## JURISDICTION AND VENUE

16.     Courthouse News' claims arise under the First and Fourteenth Amendments to the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief).  Defendants are subject to personal jurisdiction in this District.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Gilmer resides in this District, and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District.

## PARTIES

18.     Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade.  Courthouse News now employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

19.     Defendant Gilmer is the Clerk of the St. Louis County Court and is named as a defendant herein in that official capacity.  Defendant Gilmer, as Clerk, is responsible for, among other things, the administration of and access to court records, including new civil petitions.

20.     Defendant Lloyd is the Administrator for the Missouri Office of State Courts

6

Administrator, and is named as a defendant herein in that official capacity.  Defendant Lloyd, as Administrator, is responsible for, among other things, providing administrative, business and technology support services to all levels of the Missouri state court system.  The Information Technology Services Division of the Administrator's office is responsible for the development and maintenance of all software applications used by the Missouri courts, including the Missouri eFiling System and Missouri Case.net.

21.     Acting in their official capacities, Defendants and those acting under their direction and supervision are directly involved with and/or responsible for the delays in access to new petitions experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the Defendants' offices.

22.     Defendants' actions, as alleged in this Complaint, are under the color of Missouri law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

23.     Defendants are sued in their official capacities only.  Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

24.     Courthouse News is informed and believes that Defendants are each necessary and indispensable parties because both of them, acting together, are responsible for providing access to newly-filed petitions at the St. Louis County Court and throughout the Missouri state courts. Courthouse News is further informed and believes that neither Defendant Gilmer nor Defendant Lloyd, acting independently, can provide Courthouse News with complete relief in this action. Among other reasons, both Defendants play critical roles in the development and execution of the policies and practices concerning and affecting press and public access to court records in

Missouri, including but not limited to policies and practices resulting in delayed access to new e-filed civil petitions, and the unequal access policies that adversely affect the public and the press.

## FACTS COMMON TO ALL COUNTS

### Courthouse News' News Reporting Activities

25.     Courthouse News offers its readers a variety of publications.  Its *New Litigation Reports* contain original, staff-written summaries of significant new civil petitions, and are sent to subscribers via e-mail each evening.

26.     Among Courthouse News' other publications are a monthly newsletter, the *Entertainment Law Digest*, as well as the *Daily Brief*, which covers published, nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from the federal district courts.  Courthouse News also publishes a freely-available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday.  The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle.

27.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including:  *The Mercury News, ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall*

8

*Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel.  American, Canadian, and New Zealand radio shows have also interviewed Courthouse News reporters.

28.      Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and news outlets such as:   The Associated Press, *Austin American-Statesman The Atlanta Journal Constitution*, *The Boston Globe*, Buzzfeed, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review Journal, Los Angeles Business Journal, Los Angeles Times*, North Jersey Media Group, *Pacific Coast Business Times, Portland Business Journal, St. Paul Business Journal, The Salt Lake Tribune, The San Jose Mercury News, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company and Warner Bros.

29.      In Missouri, the Courthouse News litigation reports cover general civil petitions, focusing on actions brought against business institutions and public entities.  Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is well-known or otherwise notable.  For larger courts, such as the St. Louis County Court, reports are emailed to subscribers each evening.

30.      Courthouse News does not seek to review or report on the small number of new civil petitions that are statutorily confidential or accompanied by a motion to seal for a judicial determination of whether the petition should be confidential.

31.      Courthouse News publishes two *New Litigation Reports* on Missouri courts, based

in St. Louis and Kansas City, which cover civil actions filed in the two U.S. District Courts in Missouri, and circuit courts in all 114 counties of Missouri plus St. Louis City.  Courthouse News covers the St. Louis County Court in its *St. Louis Report,* which currently has 72 subscribing institutions.  Courthouse News also publishes its *Daily Brief*, which summarizes and links to appellate rulings in the Missouri Supreme Court, the Missouri appellate courts, and major rulings in the U.S. District Courts in Missouri.

32.     To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News' reporters visit their assigned court each court day to review all the petitions filed with the court that day and determine which are of interest to Courthouse News' readers.  Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new petitions necessarily holds up the reporting on factual and legal controversies for subscribers and readers.

33.     Courthouse News has reported on new petitions filed at the St. Louis County Court since at least 2005.  Until approximately October 2013, Courthouse News' reporters were able to review new civil petitions filed at the St. Louis County Court in the summons area on the fifth floor of the courthouse where they had been brought directly from the intake counter on the first floor.  The result was that Courthouse News could see new petitions filed each day, and by the end of the day on which they were filed, before they were processed or docketed.  The same was true at the St. Louis City Circuit Court, where reporters asked for the freshly-filed petitions from the cashier on the first floor of the courthouse, who would hand the reporter a stack of unprocessed cases in blue folders.  The new actions were later docketed and summonses were prepared by clerks seated a few feet away.  Both courts were examples of traditional press access to paper

filings provided in state and federal courts throughout the nation.

34.     Beginning in 2013, the St. Louis County Court moved to mandatory e-filing, and thereafter implemented a policy and practice of withholding access to new civil petitions (and other e-filed records) until after they had been processed, or docketed, by court staff. Courthouse News, and other members of the press and the public, could not see new filings until they had been processed and published to Missouri Case.net, at which point they could be viewed on public access terminals located at the courthouse. The delays between the filing date and the date of access have varied over time, ranging from one day to two weeks and more.

35.     Prior to commencing this action, Courthouse News tracked and compiled access data for civil petitions e-filed at the St. Louis County Court, noting delays between when each petition was received by the Court for filing and when the Court first made each petition available to the public. In order to maintain a record of the delays attributable solely to Defendants' post-processing access policies during the pandemic, when access to public access terminals has often been limited or restricted, Courthouse News' tracking reflects delays between when each petition was received by the court for filing and when the court first made docket information available remotely online via Missouri Case.net (which is when the petitions would have otherwise been available to the press and public on public terminals at the courthouse). In reality, access was worse than the numbers reflected in the following paragraph because Courthouse News was often unable to use public access terminals and—unlike members of the Missouri Bar—was not able to view and download copies of petitions remotely.

36.     For the period of January 1, 2020, to December 31, 2020, Courthouse News tracking shows that the St. Louis County Court made less than **5%** of new non-confidential civil petitions available the day of filing, withholding roughly **40%** of them one to four court days, and

withholding roughly **55%** of them *for one week*, and sometimes longer.  Again, these numbers reflect the access that would have been available *without* pandemic limitations.  The unavailability of remote access combined with COVID-related courthouse limitations means the delays experienced by Courthouse News from March 2020 through the present were actually worse.

37.    During 2020 and continuing to the present, members of the press and public are only able to see full and complete copies of new civil petitions on public access terminals located at courthouses if the courthouses and terminal(s) are open and available.  Attorneys, on the other hand, could review and download new civil petitions from the safety of their homes or offices as soon as the petitions were processed and published on Missouri Case.net.

### A First Amendment Right of Access Attaches to Civil Petitions When the Court Receives Them

38.    A right of access grounded in the First Amendment applies to non-confidential civil petitions.

39.    The analysis of a claim alleging a violation of the First Amendment right of access to court documents typically involves a two-step process.  The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document.  If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court process or document satisfy Constitutional scrutiny.  *See, e.g., Courthouse News Service v. Planet,* 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478  U.S. 1 (1986)).

40.    To answer the question posed by the first step of the analysis, courts in the Eighth Circuit generally apply the *Press-Enterprise II* "experience and logic" test.  *Flynt v. Lombardi*, 885 F.3d 508, 512-13 (8th Cir. 2018).   To meet this test, a party must establish "(1) a historical

tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question." *Id.* (citing *Press-Enterprise II* as "setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment access to judicial records.").

41.     "[T]he federal courts of appeal[] widely agree" that the First Amendment right of access to information reaches civil judicial proceedings and records, and "every circuit court to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings." *Planet III*, 947 F.3d. at 590 (citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)).  This right of access applies specifically to civil petitions.

42.     Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil petitions upon their receipt by a court.  *See, e.g., Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints"); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("Experience and logic both support access" to civil complaints); *Courthouse News Service v. Schaefer*, 440 F. Supp. 3d 532, 557-559 (E.D. Va. 2020) ("the Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints").

A.     **A Historical Tradition of Accessibility to Civil Petitions, *i.e.*, "Experience"**

43.     "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints."  *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein*, 814 F.3d at 141 ("Complaints have historically been publicly accessible by default").

13

44.     A new petition serves as the opening bell in a legal contest.  In recognition of the media's traditional role as a surrogate to the general public for information as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil petitions upon receipt for filing and before administrative processing.  This ensures that interested members of the public learn about new cases in a contemporaneous manner, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

45.     Historically, reporters covering the courts could review and report on newly-filed civil petitions on the day of filing by looking through the new petitions at the courthouse.  This access generally occurred upon the court's receipt of a new petition and before the clerk's office performed the additional administrative tasks that follow the receipt of a new petition—a process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and electronic filing ("e-filing"), has been referred to as "processing."

**B.     A Significant Positive Role for Public Access, *i.e.*, "Logic"**

46.     "Logical considerations also support a presumption of public access."  *Bernstein*, 814 F.3d at 141.

47.     The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which in turn often involve important issues of the day. This is especially true where, as here, Courthouse News visits courthouses on a daily basis and seeks timely access to newly filed civil petitions in order to report on their contents.

48.     The filing of a petition invokes the authority of the courts, and the American people have a right to know that the plaintiff has invoked their power to resolve a dispute and

achieve a personal end.  The petition is the basis for the dispute and plays a significant role throughout all phases of the litigation.

49.     Public access to the petition allows the public to supervise the courts and take part in the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought.  Public access to the petition also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern.  When a petition is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.

**Delays in Access to New Civil Petitions Infringe
Courthouse News' First Amendment Rights**

50.     Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil petitions, the right attaches upon the court's receipt of the document, and the press and public generally have a contemporaneous right of access.  *See, e.g., Planet III*, 947 F.3d at 588, 591 (holding the qualified right of timely access to newly-filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Schaefer*, 440 F.Supp.3d at 559 (the public and press have a "contemporaneous right of access" to newly-filed civil actions—"contemporaneous" means "on the same day as filing, insofar as practicable.").

51.     Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular process or document, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve those interests."  *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.  Here, Defendants' policies do not preserve higher values and, even if they do, they are not narrowly tailored.

15

52.    Since the St. Louis County Court's adoption of mandatory e-filing, access delays have become pervasive.  Unlike most federal district courts and many state courts, the St. Louis County Court does not make newly-filed petitions available upon e-filing with the court. Instead, the St. Louis County Court withholds the petitions while they sit in a review queue and only allows access after court staff have processed them and they have been published to Missouri Case.net.  As a direct result, there are significant delays between the filing of a new petition and when it can be reviewed by the press and public on terminals at the courthouse.

53.    The delays in access experienced by Courthouse News at the St. Louis County Court, and throughout the Missouri state courts, are unnecessary and easily avoidable.  Courts across the nation provide the press and public timely access to new e-filed petitions through means readily available to the Missouri Courts, and Courthouse News' experiences at many state and federal courts across the nation demonstrate the ease with which courts can provide timely access to new e-filed civil petitions.

54.    Historically, before e-filing, reporters covering the courts could review and report on newly-filed, paper civil petitions on the day of filing by looking at them at the courthouse, typically at the end of each court day.  As was the case at the St. Louis County Court, this access generally occurred via a media bin or box or pile available to the press regardless of whether the petitions had been docketed (or "processed," the term now often used by courts).  The same was true in this Court, where a wood box sat on the counter holding new civil actions that had just crossed the counter, checked by reporters on a regular basis.

55.    E-filing makes it even easier for courts to provide timely access to new petitions. Instead of basic intake work being done by clerks at an intake window, that work is now done by e-filing software, which filers use to enter case information and whatever minimum submission

16

requirements the court specifies before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can then sort the new, non-confidential petitions into a review queue that serves the same function as the physical bin where the intake clerk used to put new paper petitions for review by the press. However, instead of sitting in a physical bin next to an intake window, new e-filed petitions sit in an electronic queue. Some courts provide access in this manner through e-filing systems developed and hosted by third party vendors, while others provide it directly themselves through their own home-grown e-filing systems.

56.     The electronic bin goes by different names at different courts: a "Press Review Queue" (at courts in California, Georgia and Nevada using Tyler Technologies systems); a "Media Access Portal" (at Los Angeles Superior Court, which uses Journal Technologies systems); an "Electronic Media Inbox" (as promised by the Orange County Superior Court in California, which uses a state-developed system still in operation in two other superior courts); a "New Cases" tab on the "New York State Court Electronic Filing" website (at New York courts, which own and operate their own e-filing system); and "eCourt Kokua" (in Hawaii, where the courts also developed their own e-filing system and where "kokua" means "help" in the Hawaiian language). In Utah, reporters log into the XChange system, developed by the Tybera software company, to see the new cases as they are received by the court. With those various names, the result is the same—the press can report on new petitions shortly after they are filed, with busy clerks attending to their clerical tasks as their schedules allow.

57.     Federal district courts were among the first to move to e-filing, and they have taken the tradition of timely access that existed with paper and carried it forward into the electronic world. The largest group of federal courts, including the two districts in Missouri,

provide access by automatically assigning a permanent case number upon receipt of new civil complaints, which become public immediately, at all hours of the day and on all days of the week.  Other federal courts, such as the districts of Western Kentucky, Western Pennsylvania and Southern Georgia, send new cases into an electronic queue with only a common, generic number assigned, and they can then be reviewed by the press.  Under all of these systems, new complaints are available contemporaneously to the public and the press without a clerk first reviewing them or completing other post-filing clerical tasks.

58.     Many state courts have also moved to e-filing using a variety of electronic filing and case management platforms, some developed in-house and others supplied by vendors. Alabama, Connecticut, Hawaii, New York and Utah have set up their e-filing and public access systems following the federal district court model.  That is, new e-filed lawsuits flow automatically onto public access terminals and remotely online as they are filed with the courts.

59.     Other state courts provide pre-processing access to the court's queue of new e-filed, non-confidential civil petitions.  These review queue courts allow credentialed members of the press to access new e-filed petitions as soon as they are received by the court and without the delays caused by withholding them for administrative processing.  These courts include state courts in Georgia, Nevada, and the California Superior Courts of Fresno, Kern, Los Angeles, Monterey, Santa Barbara and Santa Clara.  The state courts of Arizona and the California Superior Courts of Orange County and San Francisco recently committed to providing pre-processing access to new e-filed civil lawsuits through their respective e-filing systems.

60.     Courthouse News has asked Defendants to take advantage of the review queue technology and to cease the practice of denying access to new e-filed petitions until after they have been processed by court staff.  To date, Defendants have refused Courthouse News'

request, and the St. Louis County Court continues to withhold access to new e-filed petitions until after processing. As a result, Courthouse News continues to experience significant delays in accessing new non-confidential civil petitions at the St. Louis County Court. The delays alleged above for the year 2020 continue to exist, and Courthouse News continues to experience them.

61. Defendants' unequal access policies compound the problem by imposing on the press and general public unreasonable and unnecessary restrictions on access that are not imposed on attorneys. While Defendants' policies and practices resulting in delayed access negatively impact all members of the press and public equally, the harm caused by those delays is aggravated where, as here, the press and certain members of the public (*i.e.* non-attorneys) are effectively prevented from seeing new petitions, even after they are processed and published on Missouri Case.net.

<u>**COUNT ONE**</u>
**Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**

62. Courthouse News incorporates the allegations of Paragraphs 1-61 herein.

63. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly-filed non-confidential civil petitions from press and public view until after administrative processing, and the resulting denial of timely access to new non-confidential civil petitions upon receipt for filing, deprive Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the U.S. Constitution.

64. The presumption of access to new civil petitions at the St. Louis County Court arises when those petitions are filed and may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests. For Defendants' policies and

practices to survive *Press-Enterprise II*'s two-prong balancing test, Defendants first "must demonstrate that there is a 'substantial probability' that [their] [asserted] interest[s]… would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." Defendants cannot satisfy this test with respect to any of the policies or practices alleged in this Complaint.

65.    Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and preliminary and permanent injunctive relief to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1.    A judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants' policies and practices that knowingly affect delays in access to newly-filed non-confidential civil petitions, including, *inter alia*, their policies and practices of denying access to petitions until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution because these policies and practices constitute an effective denial of timely public access to new civil petitions, which are public court records to which the First Amendment right of access applies.

2.    A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny Courthouse News timely access to new non-confidential civil petitions,

including, *inter alia*, their policies and practices of denying access to petitions until after administrative processing.

3.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.      All other relief the Court deems just and proper.

Date:   March 5, 2021                          Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By:  /s/ *J. Bennett Clark*

J. Bennett Clark (MO #30907)
Herb Giorgio (MO #58524)
Jason S. Meyer (MO #64030)
211 N. Broadway, Suite 3600
St. Louis, Missouri  63102
Tel. (314) 259-2000
Fax (314) 259-2020
ben.clark@bclplaw.com
jason.meyer@bclplaw.com
herb.giorgio@bclplaw.com

OF COUNSEL

Rachel Matteo-Boehm (CA #195492)
Katherine A. Keating (CA # 217908)
Jonathan G. Fetterly (CA #228612)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel. (415) 675-3400
Fax (415) 675-3434
rachel.matteo-boehm@bclplaw.com
katherine.keating@bclplaw.com
jon.fetterly@bclplaw.com

*Attorneys for Plaintiff*
*Courthouse News Service*