IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **COURTHOUSE NEWS SERVICE**, <br><br> Plaintiff, <br><br> v. <br><br> **JOAN M. GILMER**, in her official capacity as Clerk of the Circuit Court of St. Louis County, Missouri; and **KATHY S. LLOYD**, in her official capacity as State Courts Administrator for the Missouri Office of State Courts Administrator, <br><br> Defendants. | Case No: 21-cv-00286-HEA |

**PLAINTIFF COURTHOUSE NEWS SERVICE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    About Courthouse News ............................................................................... 2

    B.    Delays In Access at St. Louis County Circuit Court ................................... 4

    C.    Alternative Ways Other Courts Provide Access Without Delays ............... 4

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ........................................................................................................................... 6

    A.    A Preliminary Injunction Is Necessary To Curtail Defendants' Violation Of Courthouse News' First Amendment Right Of Access to Civil Petitions .............. 6

    1.    Courthouse News Can Show a Probability of Success on the Merits ..................... 6

    a.    A Presumptive First Amendment Right Attaches to New Civil Petitions When They are Received by the Court ................................................................. 7

    (i)    "Experience" Requires Public Access to Civil Petitions ........................................ 8

    (ii)    "Logic" Requires Public Access to Civil Petitions ................................................. 9

    b.    Defendants Cannot Justify Their Practice of Withholding Access to New Civil Petitions Until After Administrative Processing ........................................ 10

    2.    The Other Factors Support a Preliminary Injunction ........................................... 13

    B.    Any Injunction Bond Should Be Waived or Nominal .......................................... 13

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Associated Press,*
    162 F.3d 503 (7th Cir. 1998) ...................................................................................10

*Bernstein v. Bernstein Litowitz Berger & Grossman LLP,*
    814 F.3d 132 (2d Cir. 2016)..............................................................................8, 9, 10

*Bull v. Logetronics, Inc.,*
    323 F. Supp. 115 (E.D. Va. 1971) ............................................................................9

*In re Charlotte Observer,*
    882 F.2d 850 (4th Cir. 1989) ..................................................................................10

*Courthouse News v. Jackson,*
    2009 WL 2163609 (S.D. Tex. July 20, 2009)..............................................11, 13, 14

*Courthouse News Serv. v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ....................................................................................7

*Courthouse News Serv. v. Planet,*
    947 F.3d 581 (9th Cir. 2020) ............................................................................ passim

*Courthouse News Serv. v. Schaefer,*
    440 F.Supp.3d 532 (E.D. Va. 2020) ...............................................................1, 8, 10

*Courthouse News v. Tingling,*
    Civil Action No. 1:16-cv-08742-DR, 2016 WL 8505086 (S.D.N.Y. Dec. 16,
    2016) ..................................................................................................................11, 14

*Dataphase Sys., Inc. v. CL Sys., Inc.,*
    640 F.2d 109 (8th Cir. 1981) ....................................................................................5

*Doe v. Public Citizen,*
    749 F.3d 246 (4th Cir. 2014) ..................................................................................10

*Dhiab v. Trump,*
    852 F.3d 1087 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring
    in the judgment) .......................................................................................................7

*Elrod v. Burns,*
    427 U.S. 347 (1976)..................................................................................................6

*Flynt v. Lombardi,*
    885 F.3d 508 (8th Cir. 2018) ...............................................................................8, 11

*Globe Newspaper Co. v. Pokaski,*
    868 F.2d 497 (1st Cir. 1989)..................................................................................................10

*Globe Newspaper Co. v. Sup. Ct.,*
    457 U.S. 596 (1982)................................................................................................................7

*Hoescht Diafoil Co. v. Nan Ya Plastics Corp.,*
    174 F.3d 411 (4th Cir. 1999) ................................................................................................13

*Hurley v. Nw. Pubs., Inc.,*
    273 F. Supp. 967 (D. Minn. 1967), *aff'd*, 398 F.2d 346 (8th Cir. 1968) ..................................9

*IDT Corp. v. eBay,*709
    F.3d 1220, 1223 (8th Cir. 2013) ............................................................................................8

*Johnson v. Minneapolis Park and Rec. Bd.,*
    729 F.3d 1094 (8th Cir. 2013) ................................................................................................6

*Langford v. Vanderbilt Univ.,*
    287 S.W.2d 32 (Tenn. 1956)...................................................................................................8

*Littlejohn v. Bic Corp.,*
    851 F.2d 673 (3d Cir. 1988)..................................................................................................10

*Lugosch v. Pyramid Co. Of Onondaga,*
    435 F.3d 110 (2d Cir. 2006)..............................................................................................1, 10

*Lybrand v. State Co.,*
    184 S.E. 580 (S.C. 1936) ........................................................................................................9

*Marcus v. Iowa Pub. Television,*
    97 F.3d 1137 (8th Cir. 1996) ..................................................................................................6

*Newell v. Field Enters., Inc.,*
    415 N.E. 2d 434 (Ill. App. Ct. 1980) ......................................................................................9

*Phelps-Roper v City of St. Charles Mo.,*
    782 F.Supp.2d 789 (E.D. Mo. 2011)...................................................................................5, 7

*Phelps-Roper v. Nixon,*
    545 F.3d. 685 (8th Cir. 2008) (overruled on other grounds by *Phelps-Roper v.
    City of Manchester, Mo.*, 679 F.3d 678 (8th Cir. 2012)) ..................................................6, 13

*Press-Enterprise Co. v. Sup. Ct.,*
    464 U.S. 501 (1984)................................................................................................................7

*Press-Enterprise II v. Sup. Ct.,*
    478 U.S. 1 (1986)................................................................................................................7, 12

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ................................................................................................1, 7

*Rodgers v. Bryant,*
    942 F.3d 451 (8th Cir. 2019) ..............................................................................................5

*Salzano v. N. Jersey Media Grp. Inc.,*
    993 A.2d 778 (N.J. 2010) ....................................................................................................9

*Shiver v. Valdosta Press,*
    61 S.E. 2d 221 (Ga. Ct. App. 1950) ....................................................................................9

**Statutes**

42 U.S.C. § 1983 .................................................................................................................2

**Rules**

Fed. R. Civ. P. 65(c) ..........................................................................................................13

## INTRODUCTION

Courts across the nation recognize that the First Amendment to the U.S. Constitution guarantees the press and public a qualified right of access to civil court petitions. This right "is an indispensable predicate to free expression about the workings of government," *Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) ("*Planet III*"), and public access cases across the circuit courts recognize the importance of contemporaneous access where a right of access is found. *E.g.*, *Lugosch v. Pyramid Co. Of Onondaga*, 435 F.3d 110, 126-127 (2d Cir. 2006) (collecting cases); *Courthouse News Serv. v. Schaefer*, 440 F.Supp.3d 532, 559 (E.D. Va. 2020) (where it applies, First Amendment right of access generally requires contemporaneous access). Each passing day may constitute a separate and cognizable infringement of the First Amendment. *Lugosch*, 435 F.3d at 126.

Historically, journalists visited the Clerk's Office of the St. Louis County Circuit Court ("St. Louis County Court") on a daily basis to review the day's new civil petitions. For decades, reporters saw paper-filed actions right after they crossed the intake counter in the Clerk's Office, before the performance of administrative tasks associated with the petition's intake. This allowed the press to review and report on new lawsuits in a timely manner, fulfilling the press' role as "surrogates for the public" who acquire information about their courts "chiefly through the print and electronic media." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980).

With the advent of e-filing, however, the St. Louis County Court withholds e-filed petitions from press review until after the performance of administrative processing. As a result of this policy and practice, in 2020, the St. Louis County Court made less than **5%** of new non-confidential civil petitions available the day of filing, withholding roughly **40%** of them one to four court days, and withholding roughly **55%** of them for *one week* or longer. Declaration of Joe Harris ("Harris Decl.") ¶¶ 11-13. These delays continue, and they violate the First Amendment.

1

Courthouse News Service's ("Courthouse News") experience at the St. Louis County Court stands in stark contrast to its experience at other courts across the nation, including this Court, that provide access to new e-filed civil petitions upon receipt, without withholding them until after administrative processing. Declaration of Bill Girdner ("Girdner Decl."), ¶¶ 21-28. These other courts provide access to new civil petitions through means readily available to the St. Louis County Court, thus establishing the availability of less restrictive alternatives to Defendants' policies and practices that result in delayed access to new civil petitions. *Id*. Courthouse News requested this access earlier this year. After nearly two months, Defendant Lloyd summarily denied the request, and Defendant Gilmer did not respond to this request at all. *Girdner Decl*. ¶¶ 30-31, Exs. 1 & 2.

Courthouse News thus brings this 42 U.S.C. § 1983 action to obtain contemporaneous access to nonconfidential newly-filed civil petitions in the St. Louis County Court and, via this motion and the accompanying declarations, a preliminary injunction precluding the Defendants from withholding access to such petitions until after administrative processing is complete.

## STATEMENT OF FACTS

### A. About Courthouse News

Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. *Id*. ¶¶ 2-3. Courthouse News currently employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States. *Id*. ¶ 4. Its subscribers include other media, including The Associated Press, CNN and *The Wall Street Journal*, putting Courthouse News in the position of a pool reporter for news about civil litigation. *Id*. ¶¶ 9-11.

Courthouse News has more than 2,300 subscribers, including lawyers, law firms, law schools, libraries, nonprofits, government entities, and businesses. *Id*. Its reporting has been

credited as the source for stories by many news outlets, including newspapers (e.g., *The New York Times*, *The Wall Street Journal*); magazines (e.g., New York Magazine, U.S. News and World Report); television news (e.g., ABC News, Fox News); online-only publications (e.g., The Daily Beast, Politico); and radio (e.g., NPR). *Id*.

Courthouse News offers a variety of publications, but its core news publications are its *New Litigation Reports*. *Id.* ¶ 6. The *New Litigation Reports* feature original, staff-written reports of newsworthy civil lawsuits filed within a particular jurisdiction and are e-mailed to Courthouse News subscribers each evening. *Id.* Although not all new lawsuits are significant enough to merit coverage (and Courthouse News does not cover criminal, domestic relations, or probate matters), the *New Litigation Reports* include more coverage of newly-filed lawsuits than typically found in the daily newspapers. *Id*.

Courthouse News publishes two *New Litigation Reports* on Missouri courts, written by reporters based in St. Louis and Kansas City, covering civil actions filed in the two U.S. District Courts in Missouri, and state circuit courts in each of Missouri's 114 counties plus St. Louis City. *Id.* ¶ 7. The St. Louis County Court is covered in the *St. Louis Report,* which has 72 subscribing institutions. *Id.*

To prepare the *New Litigation Reports* and identify new cases that may warrant an article on Courthouse News' website (www.courthousenews.com), Courthouse News' reporters visit their assigned court at the end of each court day to review all the petitions filed with the court that day and determine which are of interest to Courthouse News' readers. *Id.* ¶ 16. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, any delay in the ability of a reporter to obtain and review new petitions necessarily holds up the reporting on the new actions for subscribers and readers. *Id*. ¶¶ 13-16. A delay of even a single day means that

3

news is delayed by at least one full news cycle. *Id.* Especially in today's digital age, the newsworthiness of new civil actions declines with time. *Id.* Civil actions not reported on when they are received by a court are effectively suppressed, less likely to prompt news coverage, and thus less likely to come to the public's attention as the days pass. *Id.*

### B. Delays In Access at The St. Louis County Circuit Court

Delays that impede news coverage inevitably result when clerks withhold access to new filings until after they complete administrative tasks. *Id.* ¶¶ 1, 17-18, 32-44. In St. Louis County Court, delays in access are pervasive and prevent Courthouse News (and its readers) from obtaining timely information about newsworthy and important civil lawsuits. *Id.* ¶ 20.

For the period of January 1, 2020, to December 31, 2020, Courthouse News' tracking shows that the St. Louis County Court made less than **5%** of new non-confidential civil petitions available the day of filing, withholding roughly **40%** of them one to four court days, and withholding roughly **55%** of them *for one week*, and often longer. *Id.*; Harris Decl. ¶¶ 5-11. These numbers reflect only delays resulting from Defendants' practices of withholding access until after processing, and do not account for any additional delays resulting from Defendants' practice of denying the press and general public with remote online access to court records through Missouri Case.net. *Id.* The delays experienced and tracked by Courthouse News throughout 2020 continue to this day, and are consistent with the delays experienced to date in 2021. Harris Decl. ¶¶ 12-13.

### C. Alternative Ways Other Courts Provide Access Without Delays

The delays in access experienced by Courthouse News at the St. Louis County Court, and throughout the Missouri state courts, are unnecessary and easily avoidable. Across the nation, many state courts that have moved to e-filing use a variety of electronic filing and case management platforms, some developed in-house and others supplied by vendors, to provide the

4

press and public with access to new civil petitions upon receipt by the court.  Girdner Decl. ¶¶ 21-28.  Many of these courts provide on-receipt access to new petitions, without withholding them for administrative processing or docketing by court staff, by providing an electronic press queue into which new e-filed petitions flow upon their receipt by the court.  *Id.*

Courthouse News has made repeated attempts with Defendants to resolve the delays in access at the St. Louis County Court, none of which have been successful.  Harris Decl. ¶ 4; Girdner Decl. ¶ 29.  Most recently, on January 8, 2021, Courthouse News wrote to Defendants and asked that they make new e-filed petitions available to the press through a press queue, thus resolving the delays caused by Defendants' practice of withholding access to new petitions until after processing.  Girdner Decl. ¶ 30, Ex. 1.  On March 3, 2021, the Administrator's office responded: "[t]here is not the ability in our current system to give access to new cases filed prior to clerk acceptance.  Any requests for changes to the electronic filing system must be submitted and approved by the Missouri Court Automation Committee."  *Id.* ¶ 31, Ex. 2.

Based on Courthouse News' experience, the Missouri state courts, like other state courts across the nation, and like the federal courts, have the ability to provide access to new e-filed documents upon receipt, and without the delays associated with processing or docketing.  *See id.* ¶¶ 23-28 (citing examples).  It is thus a matter of Defendants' will, not ability.

## LEGAL STANDARD

A court considering a motion for preliminary injunction must consider (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other parties; (3) the probability the moving party will succeed on the merits; and (4) the effect on the public interest.  *Rodgers v. Bryant*, 942 F.3d 451, 455-56 (8th Cir. 2019) (citing *Dataphase Sys. Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*)).

In a First Amendment case, often the determining factor in whether a preliminary

injunction should issue is the likelihood of success on the merits. *Phelps-Roper v City of St. Charles Mo.*, 782 F.Supp.2d 789, 791 (E.D. Mo. 2011) (citing *Phelps-Roper v. Nixon*, 545 F.3d. 685, 690 (8th Cir. 2008) (overruled on other grounds by *Phelps-Roper v. City of Manchester, Mo.*, 679 F.3d 678 (8th Cir. 2012)). With respect to the remaining factors, the Eighth Circuit has explained: "[a] loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm;" "it is always in the public interest to protect constitutional rights;" and, finally, "[t]he balance of equities… generally favors the constitutionally protected freedom of expression." *Id*.

## ARGUMENT

A.  **A Preliminary Injunction Is Necessary To Curtail Defendants' Violation Of Courthouse News' First Amendment Right Of Access to Civil Petitions**

When a preliminary injunction is sought in the First Amendment context, the probability the moving party will succeed on the merits should be considered first. This is because a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Johnson v. Minneapolis Park and Rec. Bd.*, 729 F.3d 1094, 1101-1102 (8th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Determination of irreparable harm thus requires analysis of the probability that Courthouse News will succeed on the merits of its First Amendment claim. *See Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140 (8th Cir. 1996) ("If [appellants] are correct and their First Amendment rights have been violated, this constitutes irreparable harm."); *see also Phelps-Roper v. Nixon*, 545 F.3d at 690.

1.  **Courthouse News Can Show a Probability of Success on the Merits**

To determine whether Courthouse News has shown a probability of succeeding on the merits of its First Amendment claim, this Court must consider two questions:

6

(i) Has Courthouse News shown a probability that the First Amendment right of access applies to new civil petitions; and

(ii) If the answer is "yes," has Courthouse News shown a probability that Defendants cannot satisfy their burden of proof to overcome the First Amendment access right, which may be restricted only if the denial of access is "essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II v. Sup. Ct.*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*").

As discussed more fully below, the answer to both questions must be "yes."[1]

### a. A Presumptive First Amendment Right Attaches to New Civil Petitions When They are Received by the Court

In a series of cases in the 1980s, the Supreme Court held the right of the press and public "to attend … hear, see, and communicate observations" about criminal court proceedings was fully protected by the First Amendment "freedoms … of speech and press." *Richmond Newspapers*, 448 U.S. at 575-76; *accord, e.g., Globe Newspaper Co. v. Sup. Ct.*, 457 U.S. 596, 603 (1982); *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501 (1984); *Press-Enterprise II*, 478 U.S. at 13-14.

While "[t]he Supreme Court has yet to explicitly rule on whether the First Amendment right of access to information reaches civil judicial proceedings and records, the federal courts of appeals widely agree that it does." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 796 (9th Cir. 2014) ("*Planet I*"); *accord Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)). Furthermore, courts have consistently found a constitutional right of access applies to civil petitions, including newly-filed

---

[1] Where a party seeks to enjoin enforcement of a state statute, the court considers whether the party is *likely* to prevail on the merits. *Phelps-Roper v. City of St. Charles*, 782 F.Supp.2d at 792. Courthouse News is not challenging a statute, but even if this higher standard applies (and it does not), it is likely to prevail on the merits of its First Amendment claim.

7

ones. *See, e.g., Planet III*, 947 F.3d at 591 (recognizing First Amendment right of access to judicial records attaches to new civil complaints); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (same); *Schaefer*, 440 F. Supp. 3d at 557-559 (same).

To determine whether there is a First Amendment right of access to a particular court proceeding or document, courts in the Eighth Circuit generally apply the *Press-Enterprise II* "experience and logic" test. *Flynt v. Lombardi*, 885 F.3d 508, 512-513 (8th Cir. 2018). This test requires a court to consider "whether the documents 'have historically been open to the press and general public'" (the "experience" prong) "and whether 'public access plays a significant positive role in the functioning of the particular process in question'" (the "logic" prong). *Id.*

Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil petitions or complaints upon their receipt by a court. *See, e.g., Planet III*, 947 F.3d at 590-594 (experience and logic establish "the qualified right of access to nonconfidential civil complaints arises when they are filed with the court"); *Bernstein*, 814 F.3d at 141 ("Experience and logic both support access" to civil complaints); *Schaefer*, 440 F. Supp. 3d at 557-559 ("the Court finds that the experience and logic test is satisfied and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaints").[2]

### (i) "Experience" Requires Public Access to Civil Petitions

"There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Schaefer*, 440 F. Supp. 3d at 557-558; *accord Bernstein*,

---

[2] While the Eighth Circuit has yet to address whether the First Amendment right of access attaches to non-confidential civil petitions, it recognizes the "modern trend in federal cases to treat pleadings in civil litigation [] as presumptively public." *IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (citations omitted); *accord Bernstein,* 814 F.3d at 140.

814 F.3d at 141 ("Complaints have historically been publicly accessible by default"); *Langford v. Vanderbilt Univ.*, 287 S.W.2d 32, 36 (Tenn. 1956) ("It is common knowledge that [ ] the press has for time out of mind published the contents of a pleading filed in Court."). This is consistent with Courthouse News' experience covering courts across the nation. Girdner Decl. ¶¶ 4-5, 17, 22.

Moreover, the history of petitions becoming public upon filing has been repeatedly recognized in the context of the "fair report" privilege against liability for reporting on the contents of a petition. "[T]he weight of modern authority" holds that reports about a petition are privileged once it is submitted for filing. *Salzano v. N. Jersey Media Grp. Inc.*, 993 A.2d 778, 790 (N.J. 2010); *see also Lybrand v. State Co.*, 184 S.E. 580, 582-83 (S.C. 1936). A "privilege to report on judicial proceedings…when the complaint is filed," *Newell v. Field Enters., Inc.*, 415 N.E. 2d 434, 444 (Ill. App. Ct. 1980), reflected the reality that reporters could obtain and report on complaints "filed the same day." *Hurley v. Nw. Pubs., Inc.*, 273 F. Supp. 967, 972 (D. Minn. 1967), *aff'd*, 398 F.2d 346 (8th Cir. 1968); *see also Shiver v. Valdosta Press*, 61 S.E. 2d 221, 226 (Ga. Ct. App. 1950) (civil complaint reported on by press "became a matter of public record the moment it was marked filed in the clerk's office, regardless of whether it had been served or not"); *Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 135 (E.D. Va. 1971) (allegations in civil complaint reported on by press became a public record "when filed").

### (ii) "Logic" Requires Public Access to Civil Petitions

"Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141. The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which in turn often involve important issues of the day. *Id.*; *Planet III*, 947 F.3d at 589-590. These values hold especially true where, as here, the impetus for Courthouse News' efforts to obtain newly filed petitions is its interest in timely reporting on their contents.

*Planet III*, 947 F.3d at 590.  Moreover, public access to civil petitions "buttresses the institutional integrity of the judiciary."  *Planet III*, 947 F.3d at 592 (citing *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014); *see also Littlejohn v. Bic Corp*., 851 F.2d 673, 682 (3d Cir. 1988) ("Public access serves to promote trustworthiness of the judicial process [] and to provide the public with a more complete understanding of the judicial system.").  The filing of a petition invokes the authority of the courts, and the American people have a right to know that the plaintiff has invoked their power to resolve a dispute and achieve a personal end.  Public access to the petition allows the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought.  *Schaefer*, 440 F.Supp.3d at 558.  When a petition is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.  *Planet III*, 947 F.3d at 593 (citing *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, No. 14-cv-6867 (VEC), 2016 WL 1071107, at *9 (S.D.N.Y. Mar. 18, 2016)).

      **b. Defendants Cannot Justify Their Practice of Withholding Access to New Civil Petitions Until After Administrative Processing**

Courts have consistently held that where, as here, the First Amendment right of access applies, it attaches upon receipt and any delays in access must be justified under Constitutional scrutiny.  *See, e.g., Planet III*, 947 F.3d at 588, 591 (holding the qualified right of timely access to newly-filed civil complaints attaches when the lawsuit is filed, *i.e*., when it is received by the court); *Lugosch*, 435 F.3d at 126-27 ("Our public access cases and those in other circuits emphasize the importance of contemporaneous access where a right to access is found"); *In re Associated Press*, 162 F.3d 503, 506 (7th Cir. 1998) ("the values that animate the presumption in favor of access require that, once access is found to be appropriate, access ought to be 'immediate and contemporaneous'"); *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) ("a 'minimal delay'" implicates the First Amendment"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507

(1st Cir. 1989) ("even a one to two day delay" "impermissibly burdens the First Amendment").

Consistent with this, in a number of cases brought by Courthouse News, federal courts have issued injunctions precluding clerks from withholding newly-filed civil petitions from public and press review, even for a short time following the courts' receipt of the documents.  *Courthouse News v. Planet*, No. 11-cv-8083, Amended Judgment, Doc. No. 270, p. 1 (C.D. Cal., Jan 26, 2021) (amended judgment declaring a qualified First Amendment right to access new complaints "on receipt" and permanently enjoining clerk from denying access to new complaints until after they are processed, regardless of whether the complaints are filed in paper or electronic form) (Girdner Decl., ¶ 41, Ex. 3); *Courthouse News v. Tingling*, Civil Action No. 1:16-cv-08742-DR, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), and Preliminary Injunction Hearing and Order Reporter's Transcript, pp. 49-53 (granting preliminary injunction where one-third of complaints were withheld from public access for a day or more) (Girdner Decl., ¶ 43, Ex. 4).; *Courthouse News v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (granting preliminary injunction where court clerk's practice of delaying access to new civil petitions until after processing resulted in 24-to-72 business hour delay in access).

Since even short delays implicate the First Amendment right of access to court records, Defendants cannot withhold new e-filed petitions pending the completion of administrative tasks unless they can show their policies and practices are both "necessitated by a compelling government interest and narrowly tailored to serve that interest." *Flynt*, 885 F.3d at 512-13.

Here, as a result of Defendants' policies and practices of withholding access to new civil petitions until after processing, the vast majority of new civil petitions filed at the St. Louis County Court in 2020 were withheld by at least one court day, with roughly **40%** of them withheld one to four court days, and roughly **55%** of them withheld for *one week* or longer.  Harris Decl. ¶¶ 2-5,

11

11; Girdner Decl. ¶¶ 17-20. The delays in access continue to the present day. *Harris Decl.* ¶ 12-13. The only justification provided for not changing their practice of withholding access to new civil petitions by providing a press review queue is the Administrator's statement: "[t]here is not the ability in our current system to give access to new cases filed prior to clerk acceptance." Girdner Decl. ¶ 31, Ex. 2. At the same time, the Administrator concedes such a change could be made. *Id*. Defendants have not provided any governmental interest justifying their policies and practices, let alone an overriding one. *See Press-Enterprise II*, 478 U.S. at 9 (access may be restricted only by an overriding interest based on findings that closure is essential).

Furthermore, even if Defendants are able to establish a compelling governmental interest justifying their policies and practices (and it is probable they cannot), it is probable Defendants cannot establish their policies and practices are narrowly tailored because courts across the nation provide access to new e-filed petitions in the very manner Defendants claim they cannot.

In recent years, many state courts have moved to e-filing using a variety of electronic filing and case management platforms, some developed in-house and others supplied by vendors. *Id.* ¶¶ 21-28. Alabama, Connecticut, Hawaii, New York and Utah have set up their e-filing and public access systems following the federal district court model. *Id*. That is, new e-filed lawsuits flow automatically onto public access terminals and/or remotely online as they are filed with the courts. *Id*. New petitions, or complaints, filed in this Court are made available to the press and public contemporaneously in this manner. *Id.* ¶ 25.

Other state courts provide pre-processing access to the court's queue of new e-filed, non-confidential civil petitions. *Id.* ¶¶ 27-28. These review queue courts allow credentialed members of the press to access new e-filed petitions as soon as they are received by the court and without the delays caused by withholding them for administrative processing. *Id*. These courts include

12

individual state courts in Georgia, Nevada, and California. The Arizona state court Administrator recently committed to providing pre-processing access to new e-filed civil petitions and is currently configuring Arizona's statewide e-filing system to do so. *Id.* ¶ 26.

Although many of these courts use different e-filing systems, they share a common characteristic: they are (or soon will be) configured to provide the press and public with access to new civil petitions upon receipt, and before administrative processing. They demonstrate the availability of less restrictive alternatives to Defendants' current policies and practices.

### 2. The Other Factors Support a Preliminary Injunction

Having established a probability of success on the merits of its First Amendment claim, it follows that Courthouse News will continue to suffer irreparable harm without injunctive relief. *See Phelps-Roper v. Nixon*, 545 F.3d at 690 (a violation of First Amendment rights for even minimal periods of time unquestionably constitutes irreparable harm). Further, "it is always in the public interest to protect constitutional rights." *Id.* Finally, "[t]he balance of equities…generally favors the constitutionally protected freedom of expression." *Id.* The First Amendment right of access "is an indispensable predicate to free expression about the workings of government." *Planet III*, 947 F.3d at 589. Defendants cannot claim any injury by ceasing the policies and practices violating Courthouse News' First Amendment rights. *See Jackson*, 2009 WL 2163609 at *5 (injunction warranted where plaintiff would be denied its First Amendment right of access, "while Defendants have alternative, constitutional ways to [ ] address their administrative concerns.")

### B. Any Injunction Bond Should Be Waived or Nominal

As for the bond under Fed. R. Civ. P. 65(c), where the enjoined party is unlikely to suffer monetary damages or harm, it is well within the Court's discretion to not impose a bond. *See Hoescht Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 42, n.3 (4th Cir. 1999) (zero bond where no evidence regarding likelihood of harm). As in the handful of other cases where

13

Courthouse News has sought to enjoin state clerk practices of withholding access until after processing, Courthouse News is simply asking to see new petitions contemporaneously as they are received for filing, irrespective of whether they have been processed.  *See* Girdner Decl. ¶¶ 35-44.  In *Jackson*, the court ordered only "a nominal bond of $1,000 as security," 2009 WL 2163609, at *5, and in *Tingling* the court set the bond "in the amount of $5,000."  *Id.* ¶ 43, Ex. 4 at 53.  The Court should exercise its discretion not to impose a bond or, alternatively, set a nominal bond.

## CONCLUSION

The public depends on the press for news and information regarding the judicial branch of government and, thus, the right of access to court filings serves an important role in the free expression of not just the press, but also the public.  Moreover, the advent of e-filing should not erase the historical tradition of access to new civil petitions.  Technology should illuminate the halls of government, not darken them.

Courthouse News thus respectfully requests that its motion be granted, that Defendants be preliminarily enjoined from declining to make newly filed civil petitions available to Courthouse News until after such petitions are processed, and that Defendants be directed to make such petitions accessible in a contemporaneous manner upon receipt.

Date:   April 5, 2021                                       Respectfully submitted,

                                                            BRYAN CAVE LEIGHTON PAISNER LLP

                                                            By:  /s/ *Jonathan G. Fetterly*

        J. Bennett Clark (MO #30907)
Herb Giorgio (MO #58524)
Jason S. Meyer (MO #64030)
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Tel. (314) 259-2000
Fax (314) 259-2020
ben.clark@bclplaw.com
herb.giorgio@bclplaw.com
jason.meyer@bclplaw.com

*Admitted Pro Hac Vice*:

Rachel Matteo-Boehm (CA #195492)
Katherine A. Keating (CA # 217908)
Jonathan G. Fetterly (CA #228612)
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel. (415) 675-3400
Fax (415) 675-3434
rachel.matteo-boehm@bclplaw.com
katherine.keating@bclplaw.com
jon.fetterly@bclplaw.com

*Attorneys for Plaintiff*
*Courthouse News Service*

15