IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COURTHOUSE NEWS SERVICE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:21-CV-00286-HEA |
| JOAN M. GILMER, et al, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

Defendants Joan M. Gilmer and Kathy S. Lloyd oppose Plaintiff's Motion for Preliminary Injunction (Doc. 17) and set forth the following suggestions in opposition thereto.

**I.   INTRODUCTION**

In Missouri, when an attorney files a civil petition it becomes publicly available once a court clerk has reviewed it and accepts it to the court's system. Plaintiff seeks an injunction attacking this practice, arguing that Defendants are violating Plaintiff's "First Amendment Right [of] Access to Civil Petitions". *See*, *e.g.*, MEMORANDUM OF LAW IN SUPPORT (Doc. 17-1), p. 6. The problems with this argument are many, including that injunctive relief may not be sought against judicial officers under 42 U.S.C. § 1983, but, fundamentally, the argument is flawed because Plaintiff is not being denied access to civil petitions. *See*, *e.g.*, Missouri Supreme Court Operating 2.02 ("Records of all courts are presumed to be

open to any member of the public for purposes of inspection or copying during the regular business hours of the court having custody of the records.").

And, in fact, although Plaintiff repeatedly couches its claims as a denial of access to civil petitions, Plaintiff's complaint and supporting documents show that it is not being denied access to civil petitions. *See*, *e.g.*, COMPLAINT (Doc. 1) (Plaintiff never alleges that it has not received access to a civil petition).

Rather, Plaintiff's real claim is that it has a constitutional right to receive access to a civil petition submitted to a court before the court has received the petition, processed it, and entered it into its system as a court record. One could spend a long time searching the text of the constitution for such a constitutional right but would not find it.

Nevertheless, Plaintiff relies on an opinion issued by the Ninth Circuit for the proposition that it has such a right, at least with respect to one California county's court filing system. *See Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020). The problem with this is four-fold.

First, the United States Supreme Court currently employs a practice similar to the practice Plaintiff challenges in this action. *See* https://www.supremecourt.gov/filingandrules/ElectronicFilingGuidelines.pdf ("Filings that initiate a new case at the Supreme Court will be posted on the Court's website only after the Clerk's Office has received and reviewed the paper version of the filing, determined that it should be accepted for filing, and assigned a case number."); *see also* United States District Court Eastern District of

Page **2** of **16**

Missouri's CM/ECF Procedures Manual, p. 7 ("COMPLAINTS . . . The Clerk's Office will be electronically notified when the case is filed, and will review the filing for errors or omissions, assign a judge and issue service.").

Second, Plaintiff ignores case law questioning whether such a right exists and holding that the federal courts should abstain from directing a state court how to run its court system, specifically concerning how it processes civil petitions. *See Courthouse News Service v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018) ("Unless and until the state courts have proven unwilling to address an alleged First Amendment violation—which we are not yet convinced exists—the federal courts should not exercise jurisdiction over the matter."); *see also Flynt v. Lombardi*, 885 F.3d 508, 512 (8th Cir. 2018) ("In *IDT*, we rejected the plaintiff's arguments for a right of access based on the First Amendment, noting, '[t]his circuit has not decided whether there is a First Amendment right of public access to the court file in civil proceedings.'") (citation omitted) (quoting *IDT Corp. v. eBay*, 709 F.3d 1220, 1221 (8th Cir. 2013)).

Third, the Ninth Circuit derived its "qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed" from *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). *See Courthouse News Service v. Planet*, 947 F.3d at 585. *Press-Enterprise Co.*, however, does not address the issue at hand. The only issue in *Press-Enterprise Co.* was whether a criminal court could bar access to a preliminary hearing in a criminal prosecution. *See Press-Enterprise Co.*, 478 U.S. 1, 3 ("We granted

certiorari to decide whether petitioner has a First Amendment right of access to the transcript of a preliminary hearing growing out of a criminal prosecution."). The case says nothing about a right to immediate access of civil petitions.

Fourth, even in the *Planet* case where a qualified right of timely access was recognized, the Ninth Circuit expressly stated that "this right does not entitle the press to immediate access to those complaints. Some reasonable restrictions resembling time, place, and manner regulations that result in incidental delays in access are constitutionally permitted where they are content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice. *Courthouse News Serv. v. Planet*, 947 F.3d at 585. In other words, there is no absolute right to have immediate access to a civil petition upon filing.

Plaintiff, therefore, has failed to allege the violation of a constitutional right, and, thus, has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983. For this reason and the others addressed below, Plaintiff's motion for preliminary injunction should be denied.

## II.   STANDARD OF REVIEW

Any form of preliminary injunctive relief is an "extraordinary remedy." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). The party seeking injunctive relief bears the burden of proving that it should be granted. *Id.* (citation omitted). Such interim relief is intended to "preserve the status quo and prevent irreparable harm until the court has an

opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994) (per curiam) (citing *Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc)).

"The Eighth Circuit enumerated four factors a district court must consider when deciding whether to grant or deny a motion for temporary restraining order or motion for preliminary injunction: '(1) whether there is a substantial probability movant will succeed at trial; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest.'" *Schenck Process LLC v. Zeppelin Sys. USA, Inc.*, 2018 WL 4279223, at *1 (W.D. Mo. June 25, 2018) (citing *Dataphase*, 640 F.2d at 112).

### III.   ARGUMENT

Before addressing the four traditional preliminary injunction factors, Defendants will address whether Plaintiff is entitled to any type of injunctive relief since its claims are against judicial officers. After addressing this issue, Defendants will address the four factors.

    **A.   Because Plaintiff has brought claims against judicial officers in their official capacity seeking to direct the operations of a state court, Plaintiff is not entitled to any type of injunctive relief.**

Plaintiff challenges practices that are subject to various court rules promulgated by the Supreme Court of Missouri. *See, e.g.*, Supreme Court of Missouri Rule 103 (electronic filing requirements); Supreme Court of Missouri Court Operating Rule 27 (electronic filing requirements); Supreme Court of

Missouri Rule 103.03(a) ("Files of the Court (a) When a court accepts an electronic document for filing, the electronic document is the official court record."); Missouri Supreme Court Rule 103.06(f) ("If the clerk accepts a document for filing, the date and time of filing entered in the case management system shall be the date and time the electronic filing system received the document.").

Plaintiff has brought its claims under 42 U.S.C. § 1983. That statute, however, expressly provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The Eighth Circuit has applied this provision to bar plaintiffs from seeking injunctive relief against policies implemented by judges. *See Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753 (8th Cir. 2019).

Defendants, who are carrying out the direction of judges, are entitled to the same immunity. *See*, *e.g.*, *Meeks v. Michigan Dep't of Corr.*, No. 1:20-CV-839, 2020 WL 5554872 (W.D. Mich. Sept. 17, 2020) ("Therefore, the *Coleman* court concluded, those clerks and administrators were entitled to the protections against injunctive relief as 'judicial officers' under 42 U.S.C. § 1983.") (citing *Coleman v. Governor of Michigan*, 413 Fed. Appx. 866 (6th Cir. 2018)); *see also Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 928 (8th Cir. 2020) ("For court clerks, absolute [judicial] immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules."); *Rock v. Franklin Cty.*, 841 F. App'x 492, 493 (3d Cir. 2021).

Section 1983's bar on injunctive relief against judicial officers, therefore, applies, and, for this reason alone, Plaintiff's motion for preliminary injunctive relief should be denied.

**B.      Plaintiff has failed to meet any of the elements required for the issuance of a preliminary injunction.**

**1.      Likelihood of success on the merits**

Plaintiff's motion for injunctive relief should be denied because they have failed to show a likelihood of success on the merits. "While no single factor is determinative . . . the Eighth Circuit has consistently held that likelihood of success on the merits is the most important factor" when considering whether to grant preliminary injunctive relief. *Comprehensive Health of Planned Parenthood Great Plains v. Williams*, 322 F. Supp. 3d 921, 928 (W.D. Mo. 2018). Satisfying this factor requires plaintiffs to demonstrate they have "a fair chance of prevailing" on the merits. *Id.* For the reasons discussed below, Plaintiff does not have a fair chance of prevailing on the merits.

**i.      Abstention**

On this same day that Defendants are filing this opposition, Defendants are also filing a motion to dismiss asserting that this Court should abstain from hearing this matter. The motion and memorandum in support will discuss this issue fully. Defendants, however, briefly raise the issue now in opposition to the motion for preliminary injunction to support its claim that Plaintiff is unlikely to succeed on the merits of its claims.

The Seventh Circuit has addressed almost identical claims and came to the

Page **7** of **16**

conclusion that "[w]e want to avoid a situation in which the federal courts are dictating in the first instance how state court clerks manage their filing procedures and the timing of press access. We also want to avoid the problems that federal oversight and intrusion of this sort might cause." *Courthouse News Service v. Brown*, 908 F.3d at 1075.

While the Ninth Circuit has issued a conflicting opinion, Defendants assert that the Seventh Circuit's opinion is well-reasoned and more in accord with the Eighth Circuit's approach to abstention than the Ninth's. *See generally Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 611 (8th Cir. 2018) ("A federal court order dictating what procedures must be used in an ongoing state proceeding would interfere with that proceeding by inhibiting the legitimate functioning of the individual state's judicial system.") (citation and internal quotations omitted); *see also Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020).

### ii. Likelihood of success on First Amendment Claim

As discussed in the introduction, neither the text of the constitution, nor any United States Supreme Court opinion supports Plaintiff's claim that Defendants are violating a constitutional right.

And, in fact, given that the United States Supreme Court currently employs the same practice as the courts in Missouri, it seems highly unlikely that the Supreme Court would find a constitutional violation as alleged by Plaintiff.

For this reason, Defendants outright reject that there is any such constitutional right to immediate access to a civil petition before a court has

received it, processed it, and accepted it as a court record.

However, assuming purely for the sake of the argument, that there is such a qualified right to timely access as found by the Ninth Circuit, Plaintiff has still failed to establish that it is likely to succeed on the merits because the practice Plaintiff challenges passes the Ninth Circuit's test.

Once it is determined that "a qualified First Amendment right of access to newly filed nonconfidential civil complaints exists, a presumption of access arises under *Press-Enterprise II* that may be restricted only if closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Courthouse News Service v. Planet*, 947 F.3d at 595 (citation and internal quotations omitted).

Plaintiff alleges that during 2020, it tracked processing times for petitions filed in one county in the State of Missouri—St. Louis County. *See* Complaint (Doc. 1), p. 3. Plaintiff alleges that 5% of the civil petitions were processed the day of filing, 40% of civil petitions were processed in one to four days, and 55% of civil petitions were processed in "one week, and sometimes longer" *Id.* Despite the statement "sometimes longer", it seems safe to assume there were not many petitions processed beyond one week or else Plaintiff would have included those statistics in its complaint. Plaintiff provided no statistics for any other court in Missouri, even though it has included the Missouri State Courts Administrator as a Defendant.

Plaintiff, therefore, is alleging that it is being denied access to some

petitions in one county in the state for up to a week. Based on this, Plaintiff claims it is entitled to a preliminary injunction requiring the entire court system in Missouri to modify its automation system.

Again, assuming for the sake of argument, that it can take up to a week or "sometimes longer" to process a petition, Plaintiff is not likely to succeed on the merits of its claim.

As the Ninth Circuit explained, "[a]n incidental delay of the right of access does not pose such inherent dangers to free expression, or present such potential for censorship or manipulations, as to justify application of the most exacting level of First Amendment scrutiny." *Courthouse News Service v. Planet*, 947 F.3d at 595 (citation and internal quotations omitted). "Even in this era of electronic filing systems, instantaneous public access to court filings, especially complaints, could impair the orderly filing and processing of cases with which clerk's offices are charged. After all, litigants are not uploading their complaints to the internet; they are filing them with a court, making them subject to judicial administration. The First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate demands of the press." *Id.* at 596.

Rather, under the Ninth Circuit's test, a court having "a substantial interest in the orderly administration and processing of new complaints" may delay access as long as "there is substantial probability that its interest in the fair and orderly administration of justice would be impaired by immediate access" and

"that no reasonable alternatives exist to adequately protect that government interest." *Courthouse News Service v. Planet*, 947 F.3d at 596 (citation and internal quotations omitted).

In Missouri, once an attorney files a document, it is placed into a queue that only court clerks have access to. *See* Exhibit 1 (attached hereto). At this point, all documents that have been placed into the queue are intermingled whether they are to be maintained as a confidential document by law or not. *Id.* When a document is in the queue, until the document has been accepted, the attorney who filed the document has the ability to recall the document from the queue. *Id.* It is a court clerk's responsibility to review the queue and ensure all requirements and confidentiality standards have been met before a document is uploaded to a separate system where the document is publicly available. *Id.* If a member of the public were granted access to the queue before a court clerk reviewed and accepted the document, the person would have access to confidential documents and documents that an attorney may have inadvertently filed before recalling it. *Id.* Further, court clerks also have to process payment, issue summonses and ensure parties are correctly entered, which can take time with cases involving multiple plaintiffs and defendants, especially considering clerks can receive many petitions filed at once by bulk filers.

St. Louis County is a major metropolitan area where numerous filings are received each year. The court automation system in Missouri is funded by state general revenue and court automation fee with limited funds available each year.

*See id.* And, it is common knowledge that during 2020, the year of Plaintiff's study, the entire planet struggled to deal with issues related to COVID-19.

Given these facts, Plaintiff is not likely to succeed on the merits as Defendants will be able to establish first that there is substantial probability that Defendants have an interest in the fair and orderly administration of justice that would be impaired by immediate access and second that no reasonable alternatives exist to adequately protect their interest.

First, Defendants' interest in the fair and orderly administration of justice would be impaired if Plaintiff was granted immediate access to the queue. Before a court clerk has had an opportunity to review the documents in the queue, the documents may not be final documents as an attorney may have inadvertently filed the wrong document and decide to recall the document or fail to comply with various requirements. In addition, the documents in the queue may include documents of a sensitive nature that Plaintiff is prohibited by law from receiving. Any delay, therefore, between the time a document is submitted to the queue and the time it becomes publicly available is directly tied to the court's interest in ensuring the orderly administration of justice, as the process necessarily involves having the staff and resources available to conduct the appropriate review of the documents before making them publicly available. This situation is unlike the circumstances in the Ninth Circuit where the court found that the record established that the delays in Ventura County where unrelated to Ventura's asserted governmental interest. *See Courthouse News Service v. Planet*, 947 F.3d

at 597 ("In fact, the record demonstrates that the lengthy delays under the no-access-before-process policy were entirely unrelated to Ventura County's asserted governmental interests.").

Second, Defendants will be able to establish that no reasonable alternatives exist to adequately protect their interest. Plaintiff's own allegations show that almost half the petitions filed in St. Louis County during the COVID-19 pandemic, where made publicly available within four days, and the rest within "one week or sometimes longer". Assuming this is true, even during a non-pandemic year where court staff was not burdened as they were in 2020, the only alternative to this processing time would be for the court to have unlimited staff and resources that would allow it to process the petitions at a faster rate than they currently are. Given the state of the world and the many demands currently placed on staff and state resources, this is not a "reasonable" alternative, especially balanced against Plaintiff's asserted interest. Whether Plaintiff receives the petition the day it was filed or within a week, it is unclear why it is any different position. The only people who know that a petition has been filed are the attorney and client who filed it, and they could announce it to the world at any time before, at, or after the filing of the petition.

Consequently, even if the Court were to adopt the Ninth Circuit's approach, Plaintiff has failed to establish that it is likely to succeed on the merits of its First Amendment claim.

## 2. The remaining factors weigh against granting a preliminary injunction.

The remaining factors a district court must consider when deciding whether to grant or deny a motion for preliminary injunction include: "(2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest.'" *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc). All these factors weigh against Plaintiffs' request for relief.

First, Plaintiff cannot demonstrate a threat of irreparable harm that would justify a preliminary injunction. As discussed above, it is unclear how a delay of up to a week to review a petition harms Plaintiff. When a person is contemplating filing a petition, the person may send a demand letter before filing. They also could start seeking media attention by contacting media sources. They could do this the same day the petition is filed, even before they have submitted the petition to the court, or later. Absent this, whenever a petition is filed whether the attorney does it on May 3, or a week later, no one knows about it except for the submitting party until the petition is actually filed and accepted by the court. So, whether Plaintiff Courthouse News receives access to a petition the moment it is submitted to the queue or a few days later, it is in the same position. And, in fact, Plaintiff has not identified any specific harm other than the alleged First Amendment violation itself.

Second, if this Court were to do what Plaintiff is asking, which is to immediately alter how it processes filings, that would cause per se irreparable

harm to Defendants because it would force Defendants to ignore state law and expend limited staff time and resources on modifying its systems before Defendants have had an opportunity fully litigate their defenses. *See* Exhibit 1 ("An analysis would have to be completed to determine design, scope, cost, resources and timeframe before a solution could be developed. . . Statewide court automation is funded by state general revenue and the court automation fee. There are limited funds available each year for development."). This would be particularly harmful in this circumstance because Plaintiff has provided no security as required under Fed R. Civ. P 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

Third, the public interest strongly disfavors injunctive relief. Injunctive relief frustrates Missouri's legitimate and compelling interest to enforce its laws, as well as its compelling interest in administering its own system of justice. *See United States v. Salerno*, 481 U.S. 739, 749 (1987). When the State is a party, its interest and harm merges with that of the public. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Preliminary injunctions are to maintain the status quo, not drastically alter a statewide system before trial.

## V.   CONCLUSION

Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

Respectfully submitted,

ERIC S. SCHMITT
Attorney General

 */s/ D. Ryan Taylor*
D.RYAN TAYLOR
Assistant Attorney General
Missouri Bar No. 63284
Fletcher Daniels State
Office Building
615 E. 13th Street, Suite 401
Kansas City, MO 64106
Phone: (816) 889-5008
Fax: (573) 751-5660
ryan.taylor@ago.mo.gov

 /s/ *Gerald Jackson*
Assistant Attorney General
Missouri Bar No. 66995
P.O. Box 899
Jefferson City, MO 65102
Telephone: 573-751-7493
Facsimile: 573-751-5660
Gerald.jackson@ago.mo.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 3, 2021, a true and accurate copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system to all entered parties.

*/s/ D. Ryan Taylor*
Assistant Attorney General