# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:21CV286 HEA |
| | ) |
| JOAN M. GILMER, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction, [Doc. No. 17], and Defendants' Motion to Dismiss, [Doc. No. 29]. Plaintiff claims Defendants are violating its First Amendment right of access to public court records. Plaintiff seeks to enjoin Defendants from their practice of withholding access to nonconfidential newly filed civil petitions until after administrative processing is complete. Meanwhile, Defendants contend that this Court should abstain from exercising jurisdiction over this matter based on principles of federalism, comity, and equity. A hearing on the Motion for a Preliminary Injunction was held on May 17, 2021, and both motions have been fully briefed.  For the reasons set forth below, the Motion for a Preliminary Injunction is denied and the Motion to Dismiss is granted.

## Facts and Background

Plaintiff's verified Complaint alleges the following:

Plaintiff Courthouse News Service ("CNS" or "Plaintiff") is a nationwide news service that covers civil litigation in state and federal trial and appellate courts in all 50 states in the United States. Defendant Joan M. Gilmer ("Gilmer") is the Clerk of the St. Louis County Court and Defendant Kathy S. Llyod ("Lloyd") is Administrator for the Missouri Office of State Courts Administrator ("OSCA"). Gilmer and Lloyd (collectively, "Defendants") are each named as a defendant in her official capacity. In their official capacities, Gilmer is responsible for the administration of and access to court records, including new civil petitions, while Lloyd is responsible for providing administrative, business and technology support services to all levels of the Missouri state court system. Defendants' actions, as alleged in the Complaint, are under the color of Missouri law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

In addition to other publications, CNS publishes *New Litigation Reports*, which contain original summaries of significant new civil petitions and are sent to subscribers via e-mail each evening. CNS also publishes a freely available news and commentary website, www.courthousenews.com. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation

that are posted throughout the day and rotated on a 24-hour news cycle.

In Missouri, the CNS litigation reports cover general civil petitions, focusing on actions brought against business institutions and public entities. CNS reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals unless the individual is notable. CNS does not seek to review or report on statutorily confidential petitions or petitions sought to be filed under seal. St. Louis County Court reports are emailed to subscribers each evening.

To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, CNS' reporters visit their assigned court each court day to review all petitions filed with the court that day and determine which are of interest to CNS' readers. Any delay in the ability of a reporter to obtain and review new petitions necessarily holds up the reporting on factual and legal controversies for subscribers and readers.

CNS has reported on new petitions filed at the St. Louis County Court since at least 2005. Until approximately October 2013, CNS' reporters were able to review new civil petitions filed at the St. Louis County Court in the summons area on the fifth floor of the courthouse where they had been brought directly from the intake counter on the first floor. CNS could see the new petitions by the end of the

3

day on which they were filed, before processing or docketing. The new petitions were later docketed and summonses were prepared by clerks seated a few feet away. This exemplifies traditional press access to paper filings provided in state and federal courts throughout the nation.

In 2013, the St. Louis County Court moved to mandatory e-filing, and thereafter implemented a policy and practice of withholding access to new civil petitions until after they had been processed, or docketed, by court staff. CNS and other members of the press and the public could not see new filings until they had been processed and published to Missouri Case.net, at which point they could be viewed on public access terminals located at the courthouse. The delays between filing date and date of access have varied, ranging from one day to over two weeks.

Prior to commencing this action, CNS tracked and compiled access data for civil petitions e-filed at the St. Louis County Court, noting the time between the court's receipt of each petition and the court's first making the petition available to the public.[1] For the period of January 1, 2020, to December 31, 2020, CNS' data shows that St. Louis County Court made less than 5% of new non-confidential

---

[1] As alleged in the Complaint: During the pandemic, CNS' access was more delayed than the data shows because CNS was often unable to use public access terminals and could not view and download the petitions remotely. In order to maintain a record of the delays attributable solely to Defendants' post-processing access policies during the pandemic, when access to public access terminals has often been limited or restricted, CNS calculated the delays between the court's receipt of each petition and the court's making the docket information available remotely online via Missouri Case.net. The date of remote online availability on Missouri Case.net is same as the date that petitions would have been available to the press and public on the public terminals at the courthouse.

civil petitions available the day of filing, withheld roughly 40% of them one to four court days, and withheld roughly 55% of them for one week or longer. Beginning in 2020, members of the press and public are only able to see full and complete copies of new civil petitions on public access terminals located at courthouses if the courthouses and terminals are open and available. Attorneys, on the other hand, can review and download new civil petitions from the safety of their homes or offices as soon as the petitions were processed and published on Missouri Case.net.

The filing of a petition invokes the authority of the courts, and the American people have a right to know that the plaintiff has invoked their power to resolve a dispute and achieve a personal end. The petition is the basis for the dispute and plays a significant role throughout all phases of the litigation. Public access to the petition allows the public to supervise the courts and take part in the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought. Public access to the petition also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern. When a petition is withheld from the public, it leaves the public unaware that a claim has been leveled and that state power has been invoked.

Because the media traditionally provide the general public with information

about court activity, there is a long-standing tradition for courts to provide reporters with access to new civil petitions upon receipt for filing and before the clerk's office performed the additional administrative tasks that follow the receipt of a new petition. This ensures that the public may learn about new cases in a contemporaneous manner, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

Since the St. Louis County Court's adoption of mandatory e-filing, access delays have become pervasive. Unlike most federal district courts and many state courts, the St. Louis County Court does not make newly filed petitions available upon e-filing with the court. Instead, the St. Louis County Court withholds the petitions while they sit in a review queue, allowing access only after court staff have processed them and they have been published to Missouri Case.net. As a direct result, there are significant delays between the filing of a new petition and when it can be reviewed by the press and public on terminals at the courthouse.

The delays in access experienced by CNS at the St. Louis County Court, and throughout the Missouri state courts, are unnecessary and easily avoidable. Courts across the nation provide the press and public timely access to new e-filed petitions through means readily available to the Missouri Courts, and CNS' experiences at many state and federal courts across the nation demonstrate the ease with which

6

courts can provide timely access to new e-filed civil petitions.

With e-filing, basic intake work need not be done by clerks at an intake window, rather, that work is now done by e-filing software, which filers use to enter case information and the court's minimum submission requirements before submitting their e-filings to the court. Based on the case designation supplied by the filer, the e-filing software can then sort the new, non-confidential petitions into a review queue that serves the same function as the physical bin where the intake clerk used to put new paper petitions for review by the press. However, instead of sitting in a physical bin next to an intake window, new e-filed petitions sit in an electronic queue. Some courts provide access in this manner through e-filing systems developed and hosted by third party vendors, while others provide it directly themselves through their own home-grown e-filing systems.

Although the electronic bin goes by different names at different state courts,[2] each system allows the press to review and report on new petitions shortly after they are filed. Federal district courts also use e-filing and provide timely access to

---

[2] The names include: "Press Review Queue" (at courts in California, Georgia and Nevada using Tyler Technologies systems); a "Media Access Portal" (at Los Angeles Superior Court, using Journal Technologies systems); an "Electronic Media Inbox" (as promised by the Orange County Superior Court in California, which uses a state-developed system); a "New Cases" tab on the "New York State Court Electronic Filing" website (at New York courts, which own and operate their own e-filing system); "eCourt Kokua" (in Hawaii, where the courts also developed their own e-filing system); and the "XChange system" (in Utah, developed by the Tybera software company).

newly filed petitions.[3] Under Federal district courts' systems, new complaints are available contemporaneously to the public and the press without a clerk first reviewing them or completing other post-filing clerical tasks.

Alabama, Connecticut, Hawaii, New York and Utah have set up their e-filing and public access systems following the federal district court model. Other state courts provide pre-processing access to the court's queue of new e-filed, non-confidential civil petitions. These "review queue" courts[4] allow credentialed members of the press to access new e-filed petitions as soon as they are received by the court and without the delays caused by withholding them for administrative processing.

Plaintiff has asked Defendants to take advantage of the review queue technology and to cease the practice of denying access to new e-filed petitions until after they have been processed by court staff. To date, Defendants have refused Plaintiff's request. Plaintiff continues to experience significant delays in accessing new non-confidential civil petitions at the St. Louis County Court.

---

[3] The largest group of federal courts, including the two districts in Missouri, provide access by automatically assigning a permanent case number upon receipt of new civil complaints, which become public immediately, even outside of business hours. Other federal courts, such as the districts of Western Kentucky, Western Pennsylvania and Southern Georgia, send new cases into an electronic queue with only a common, generic number assigned, where they can then be reviewed by the press.

[4] Courts with "review queues" include state courts in Georgia, Nevada, and the California Superior Courts of Fresno, Kern, Los Angeles, Monterey, Santa Barbara and Santa Clara. The state courts of Arizona and the California Superior Courts of Orange County and San Francisco recently committed to providing preprocessing access to new e-filed civil lawsuits through their respective e-filing systems.

Defendants' policies result in unequal access by imposing on the press and general public unreasonable and unnecessary restrictions on access that are not imposed on attorneys. The harm caused by delayed access resulting from Defendants' policies and practices "is aggravated" because the press and non-attorney members of the public "are effectively prevented from seeing new petitions, even after they are processed and published on Missouri Case.net."

Plaintiff alleges that through "their policies and practices of withholding newly-filed non-confidential civil petitions from press and public view until after administrative processing, and the resulting denial of timely access to new non-confidential civil petitions upon receipt for filing," Defendants have deprived it and its subscribers of their right of access to public court records secured by the First Amendment to the U.S. Constitution. It further alleged that Defendants cannot demonstrate that there is a substantial probability that their asserted interests would be impaired by immediate access, and second, that no reasonable alternatives exist to adequately protect that government interest. Plaintiff alleges it "has no adequate and speedy remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights."

## Discussion

Plaintiff seeks a preliminary injunction precluding Defendants from

withholding access to civil petitions until after administrative processing is complete. Plaintiff argues that an injunction is necessary to curtail Defendants' violation of its First Amendment right of access to civil petitions when they are received by the St. Louis County Court. In response, Defendants argue that this Court should abstain from exercising jurisdiction in this matter because Plaintiff's claim puts the federal court in direct conflict with Missouri courts and any relief granted would put this Court in a supervisory role over Missouri courts.

Defendants also argue that Plaintiff's request for a preliminary injunction should be denied on its merits. In their motion to dismiss, Defendants seek dismissal of Plaintiff's Complaint on the bases of abstention or for failure to state a claim upon which relief can be granted.

Federal courts have a strict, but not absolute duty to exercise the jurisdiction that is conferred upon them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). "[F]ederal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations,' or 'wise judicial administration.' " *Id.* (internal quotations and citations omitted).

CNS has brought factually similar lawsuits in various Federal District Courts around the country. Thus far, two Circuit Courts of Appeal have issued substantive rulings in such cases: the Seventh Circuit in *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018) and the Ninth Circuit in *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014) ("*Planet I*") and *Courthouse News Service v. Planet*, 947 F.3d 581 (9th Cir. 2020) ("*Planet III*").

The Seventh and Ninth Circuits are split on the issue of abstention. In *Planet I*, the Ninth Circuit ruled that the California District Court's abstention on CNS' claims was error. After *Planet I* was decided, the Seventh Circuit in *Brown* ruled that the Illinois District Court must abstain from hearing CNS' claim. The Seventh Circuit acknowledged that *Planet* was a "nearly identical" case and thus that its decision created a circuit split. *Brown*, 908 F.3d at 1074, 1075 n.6. The Supreme Court denied certiorari in *Courthouse News Service v. Brown*, 140 S.Ct. 384 (2019) (mem).

Planet I and the Ninth's Circuit's Approach

In *Planet I*, CNS sued Ventura County, California court officials for denying same-day, pre-processing access to civil court complaints. 750 F.3d 776, 779. The Ninth Circuit reversed the district court's decision to abstain under the *Pullman* and *O'Shea* abstention doctrines, reasoning that the legal requirements for abstention were not satisfied under either doctrine. *Planet I*, 750 F.3d at 783; *see*

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

The Ninth Circuit held that the first requirement for *Pullman* abstention – that "the case touches on a sensitive area of social policy upon which the federal courts ought not to enter" – was not met because CNS was asserting its First Amendment right of timely access to judicial proceedings and documents. *Id.* at 784–85 (quoting *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003)). It further noted that the first *Pullman* requirement "is 'almost never' satisfied in First Amendment cases 'because the guarantee of free expression is always an area of particular federal concern.' " *Id.* at 784 (quoting *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989)). The Ninth Circuit went on to write that "[a]bstaining in this case portends particularly egregious damage to First Amendment rights because it stifles the 'free discussion of governmental affairs' that the First Amendment exists to protect." *Id.* at 787 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982)).

In *O'Shea*, residents of Alexander County, Illinois alleged that a county magistrate and a circuit court judge violated their civil rights by unfair administration of the criminal justice system, i.e., setting higher bail for and imposing harsher sentences on black defendants than white defendants. 414 U.S. at

490. The *O'Shea* plaintiffs requested an injunction prohibiting these race-based

practices. *Id.* at 492. As summarized by the Ninth Circuit:

> Relying on its then-recent decision in *Younger v. Harris,* 401 U.S. 37,
> 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court explained
> that principles of comity and federalism "preclude[d] equitable
> intervention" because the plaintiffs sought "an injunction aimed at
> controlling or preventing the occurrence of specific events that might
> take place in the course of future state criminal trials." *O'Shea,* 414
> U.S. at 499–500, 94 S.Ct. 669. *Younger* had established a firm rule
> against enjoining ongoing state criminal proceedings, absent
> exceptional circumstances, and the plaintiffs in *O'Shea* simply sought
> to "indirectly accomplish the [same] kind of interference" through an
> "ongoing federal audit" of state proceedings. *Id.* at 500, 94 S.Ct. 669.

*Planet I,* 750 F.3d at 789.

In *Planet I*, the Ninth Circuit explained that it views *O'Shea* "as standing for

the more general proposition that '[w]e should be very reluctant to grant relief that

would entail heavy federal interference in such sensitive state activities as

administration of the judicial system.' " *Id.* at 789-90 (quoting *L.A. Cnty. Bar Ass'n*

*v. Eu,* 979 F.2d 697, 703 (9th Cir. 1992)). The Ninth Circuit further opined that a

reading of circuit precedent "suggest[s] that *O'Shea* abstention is inappropriate

where the requested relief may be achieved without an ongoing intrusion into the

state's administration of justice, but is appropriate where the relief sought would

require the federal court to monitor the substance of individual cases on an ongoing

basis to administer its judgment." *See L.A. County Bar Ass'n*, 979 F.2d 697; *E.T. v.*

*Cantil–Sakauye,* 682 F.3d 1121, 1124 (9th Cir. 2011) (per curiam).

The Ninth Circuit found that the district court erred by finding that remedying Ventura County's denial of the First Amendment right to timely access newly filed complaints would necessarily require "an ongoing federal audit," rather, "the remedy that CNS seeks is more akin to the bright-line finding that we approved in *Los Angeles County Bar Ass'n* than the ongoing monitoring of the substance of state proceedings that we rejected in *E.T.*" *Id.* at 791. The Ninth Circuit reasoned that "[t]o determine whether the Ventura County Superior Court is making complaints available on the day they are filed, a federal court would not need to engage in . . . intensive, context-specific legal inquiry . . . There is little risk that the federal courts would need to 'examin[e] the administration of a substantial number of individual cases' to provide the requested relief." *Id.* (quoting *E.T.*, 682 F.3d at 1124).

The Ninth Circuit ultimately decided that the district court's abstention based on *O'Shea* was error because an injunction posed little risk of an "ongoing federal audit" or "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state ... proceedings." *Id.* at 792.

<u>*Brown* and the Seventh Circuit's Approach</u>

*Brown* presented almost identical facts to those in *Planet I*: CNS sued the clerk of the circuit court of Cook County, Illinois for publicly releasing newly filed complaints only after administrative processing, as opposed to instant access upon

receipt. 908 F.3d at 1065. The Seventh Circuit reversed the district court's order granting a preliminary injunction, holding that the district court should have abstained from exercising jurisdiction based on "the principles of equity, comity, and federalism." *Id.* at 1065-66.

The Seventh Circuit acknowledged that the facts in *Brown* did not fit perfectly within the four principal abstention doctrines recognized by the Supreme Court: *Pullman*, *Burford*,[5] *Younger*, and *Colorado River*.[6] *Id.* at 1071. The most closely applicable abstention doctrine, the Seventh Circuit noted, is the one established in *Younger*, especially as extended in *O'Shea* and *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). "*Younger* abstention ordinarily requires federal courts to refrain from exercising jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *Brown*, 908 F.3d at 1071 (citing *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007)). The Seventh Circuit noted that in *Brown*, "there is no individual, ongoing state proceeding that plaintiffs seek to enjoin," thus "this case does not fit neatly into the *Younger* doctrine." 908 F.3d at 1072.

Although not perfect fits, the Seventh Circuit found instructive the Supreme Court's holdings in *O'Shea* and *Rizzo*. The Seventh Circuit quoted the Supreme

---

[5] *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
[6] *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Court's caution in *O'Shea* "against injunctions that would lead to 'an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* ... and related cases sought to prevent.' " *Id.* (quoting *O'Shea*, 414 U.S. at 500). The Seventh Circuit also quoted the holding in *Rizzo*:

> When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. * * *

> When the frame of reference moves from a unitary court system, governed by the principles just stated, to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.

*Id.* at 1073 (quoting *Rizzo*, 423 U.S. at 378-79). It further quoted the Supreme Court's dictate that "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' " *Id.* (quoting Rizzo, 423 U.S. at 378) (internal quotation marks excluded).

Acknowledging the less-than-perfect fit of *O'Shea* and *Rizzo*, the Seventh Circuit nevertheless wrote that an injunction in *Brown* "would also impose a significant limit on the state courts and their clerk in managing the state courts' own affairs." *Id.* at 1073. "Against the backdrop of *Younger*, *O'Shea*, and *Rizzo*,

we find that CNS's request for federal intrusion at this stage of the dispute between

CNS and the [Cook County] Clerk calls for abstention." *Id.*

The Seventh Circuit ultimately relied on the abstention principles of equity,

federalism, and comity in finding that abstention was called for in *Brown*. 908 F.3d

at 1065-66. The Seventh Circuit likened *Brown* to *SKS & Associates, Inc. v. Dart*,

619 F.3d 674, 677 (7th Cir. 2010):

> The situation here is quite similar to *SKS & Associates*, where we
> applied the principles of *Younger* and declined to exercise jurisdiction
> over a Section 1983 action against the Chief Judge and the Sheriff of
> Cook County. 619 F.3d at 676. In that case, the Sheriff was subject to
> a general order issued by the Chief Judge that directed him not to
> carry out residential evictions during a two-and-a-half-week period in
> December and during periods of extreme cold weather. *Id.* The
> plaintiff, a residential property manager, sought a federal injunction
> against the Sheriff to speed up the eviction processes in state court. *Id.*
>
> In declining to exercise jurisdiction, we explained that it is important
> for federal courts to have "a proper respect for state functions, a
> recognition of the fact that the entire country is made up of a Union of
> separate state governments, and a continuance of the belief that the
> National Government will fare best if the States and their institutions
> are left free to perform their separate functions in their separate
> ways." *Id.*, citing *New Orleans Public Service*, 491 U.S. at 364, 109
> S.Ct. 2506, citing in turn *Younger*, 401 U.S. at 44, 91 S.Ct. 746. We
> concluded that it was not appropriate for the federal courts, in the face
> of these principles of equity, comity, and federalism, to undertake the
> requested supervision of state court operations. *SKS & Associates*, 619
> F.3d at 682.
>
> Despite *SKS & Associates* not being a typical *Younger* scenario, we
> pointed out that the Supreme Court characterized the holding
> of *Younger* as "far-from-novel" because it rested primarily on the
> "even more vital consideration" of comity. *Id.* at 678 (citations
> omitted). "Cooperation and comity, not competition and conflict, are

17

essential to the federal design," and *Younger* abstention "reinforces our federal scheme." *Kowalski v. Tesmer*, 543 U.S. 125, 133, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004), citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 586, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

*Brown*, 908 F.3d  at 1073-74.

The Seventh Circuit noted that the principle of comity, which stands for the equality of state courts and federal courts and underlies the *Younger* abstention doctrine, assumes that states courts are "fully capable of respecting and protecting CNS's First Amendment rights. *Id.* Another implication of comity is that state courts are best positioned to interpret their own orders. *Id.* The Seventh Circuit opined that until state courts had a chance to consider the constitutional issue presented in *Brown*, the level of intrusion from the federal court sought by CNS was "simply too high." *Id.* at 1074. The Seventh Circuit thus concluded that while CNS was "free to pursue a remedy in the state courts," its "claims [were] not suitable for resolution in federal courts at this time." *Id.*

In disagreeing with the Ninth Circuit's holding in *Planet*, the Seventh Circuit found that ongoing federal involvement in the state court's affairs would "certainly continue" if the state court clerk failed to fully comply with the injunction. *Id.* The Seventh Circuit further reasoned, "[w]e want to avoid a situation in which the federal courts are dictating in the first instance how state court clerks manage their filing procedures and the timing of press access. We also want to avoid the problems that federal oversight and intrusion of this sort might

18

cause." *Id.* at 1075. The Seventh Circuit concluded by reiterating its belief that "[t]his temporal access dispute with a state court clerk should be heard first in the state courts." *Id.*

This Court Adopts Seventh Circuit's Approach

Neither this Court nor the parties to this lawsuit have identified Eight Circuit case law providing meaningful instruction in this case. Nor has any party identified factual distinctions between this case, *Planet*, and *Brown* to suggest that this case requires new or different legal considerations than those employed by the Ninth and Seventh Circuits in their respective opinions. After thorough examination and consideration of the parties' arguments and the relevant law, this Court adopts the Seventh Circuit's approach as set forth in *Brown*.

Proper application of the principles of equity, comity, and federalism warrant abstention, even though the facts of case do not fit into the four abstention doctrines. As the Supreme Court stated, "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest . . . for example, where abstention is warranted by considerations of . . . regard for federal-state relations." *Quackenbush*, 517 U.S. at 716 (internal quotations and citations omitted). "Cooperation and comity, not competition and conflict, are essential to the federal design." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004).

Quoting *Brown*, the Eighth Circuit has stated that "[the] principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020). This Court does not wish to dictate to, oversee, or otherwise insert itself into the of operations and administration of its co-equal Missouri state courts. *See Brown*, 908 F.3d at 1070-1071 ("[A] federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts."). This Court agrees with the Seventh Circuit's holding in *Brown* that CNS's claims regarding state court operations should be heard in state courts before this Court exercises its jurisdiction.

Additionally, the Seventh Circuit noted that neither it nor the Supreme Court provide instant access to court filings, a fact that "would make it unusual, and perhaps even hypocritical, for us to order a state court clerk to provide such instant access on the basis of the same Constitution that applies to federal courts." *Id.* at 1065. Indeed, the Supreme Court's current rules provide that: "[f]ilings that initiate a new case at the Supreme Court will be posted on the Court's website only after the Clerk's Office has received and reviewed the paper version of the filing, determined that it should be accepted for filing, and assigned a case number." *Guidelines for the Submission of Documents to the Supreme Court's Electronic Filing System*, SUPREMECOURT.GOV (updated November 20, 2017), *available at*

https://www.supremecourt.gov/filingandrules/ElectronicFilingGuidelines.pdf.

Plaintiff does not address this argument, which was advanced by Defendants in their memoranda and at oral argument. For this District Court to impose on a state court a practice which is not currently employed by the Supreme Court of the United States strikes this Court as very strange, indeed.

### Conclusion

Because Plaintiff's requested injunction would cause this Court to interfere with the affairs of the state court, and based on the principles of equity, comity, and federalism, this Court will abstain from exercising jurisdiction in this matter. The case will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that on Plaintiff's Motion for a Preliminary Injunction, [Doc. No. 17], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 29], is **GRANTED**.

Dated this 15th day of June, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE